# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

**EDDIE MARCELLE WHEELER,**

    **Plaintiff,**

vs.                                                  **CASE NO. 1:03CV140-MMP/AK**

**UNITED STATES OF AMERICA,**

    **Defendants.**

_____/

## THIRD REPORT AND RECOMMENDATION

Plaintiff brings this cause pro se and pursuant to the Federal Torts Claims Act, 28 U.S.C. §2674, et seq., alleging medical malpractice by doctors at the Veterans Hospital. Defendants have filed motions for summary judgment (docs. 40, 44 and 46), and Plaintiff has responded. (Docs. 49, 53, 55, 58, 59, 60, 65, 77 and 78).

**I.**     **Allegations of the second amended complaint (doc. 14).**

Plaintiff contends that he injured his jaw on November 21, 1999, and went to the emergency room at Doctors Memorial Hospital in Perry, Florida. X-rays were taken, but the doctors said that there was not a fracture and he should seek treatment from Hamdan Ear, Nose & Throat Center. At this appointment, Dr. Hamdan told him he should get an MRI from Doctors Memorial and that he would need surgery as soon as possible. Apparently Dr. Hamdan identified four fractures in the jaw. Dr. Hamdan arranged with Dr. Wilt at the Veterans Hospital for a transfer that afternoon, but Dr. Wilt

was gone when Plaintiff arrived and he was not admitted until the next day, December 4, 1999. For reasons Plaintiff did not understand he was discharged and rescheduled for surgery on December 9, 1999. During this delay, Plaintiff developed an infection. Plaintiff complains that his jaw did not come together right after the surgery, and he could not open it well enough to eat. He saw Dr. Graper at the Facial Institute, where he learned that he would require reconstruction surgery which was done on November 23, 2001, and was not completely successful because of scar tissue from the first surgery at the VA hospital.

Plaintiff claims that the doctors at the VA caused him to have scar tissue which has interfered with his recovery, they extracted teeth unnecessarily, they left his jaw dislocated, and left loose screws and hardware at the repair site, all of which caused him two and one half years of pain and suffering. Plaintiff seeks 2 million dollars in damages, past and future medical bills, and compensation for the 8% disability rating assigned to him by Dr. Graper.

## II. Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v.

**No. 1:03cv140-mmp/ak**

Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Celotex, 477 U.S. at 322-23.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998), quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or

**No. 1:03cv140-mmp/ak**

other evidentiary materials must be accepted as true for purposes of summary judgment. Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

### III.     Defendant's Relevant Rule 56(e) evidence (doc. 40, exhibit)

Defendant has attached Plaintiff's medical and dental records which show that he was seen at the VA Hospital on December 2, 1999, reporting a fall two weeks prior when he hit his face. He said that he was pushing his vehicle when he slipped and hit his chin on the vehicle. X-rays taken at the ER in Perry, Florida, reportedly showed no fractures, but Plaintiff reported continued pain and that his teeth did not "fit right." A CT scan showed bilateral mandible fractures. Notes show that Plaintiff left on 12/2/99 at 8:00 p.m. without being seen because he was tired of waiting, but was admitted when he returned the next day. However, he was discharged the next day with pain pills and antibiotics to return on 12/6/99 for "short stay surgery." Another note says "we attempted to have surgery scheduled, however, for various reasons the surgery was postponed. At time of discharge, 12/04/99, it was rescheduled for 12/09/99." On 12/09/99, he underwent surgery. "Arch bars" and "intermaxillary fixation screws" were placed with a follow up scheduled for two to three weeks where the arch bars would be removed and elastics would replace the fixation screws. It was anticipated that after the elastics were removed the "IMF hardwares" would be removed also. Surgical notes show that he tolerated the procedure well, was scheduled for discharge the next day, and was to return to the clinic for removal of his IMF wires in 2 to 3 weeks. Notes indicate one tooth, a "loose left lower premolar was extracted." On January 24, 2000, he returned for wire removal and arch bar removal. He was to return on February 25 for

**No. 1:03cv140-mmp/ak**

hardware removal. The removal was actually conducted on February 17, 2000. A follow-up appointment on March 6, 2000, showed him improving. However, on April 5, 2000, he presented with "significant dental malocclusion." Complaints indicate that he had multiple fractures and multiple teeth extracted and would be getting a lower partial denture. Two more teeth were extracted, partial plates were made, and an occlusal adjustment was made. After this procedure, Plaintiff was told to follow up with his family dentist and the case was deemed completed and closed.

### IV. Plaintiff's Rule 56(e) evidence (doc. 65)

a) <u>Letter from Dr. Charles E. Graper</u>

In a letter "To Whom It May Concern" dated April 26, 2002, Dr. Graper states:

> Mr. Wheeler was first seen by our office on 10-24-01. He had a chief complaint of inability to bring his jaws together and restricted jaw movement. He had previously fallen and hit his face sustaining a bilateral complicated mandibular fracture. He was seen by another practitioner who did a unilateral reduction leaving the opposite side still dislocated. He came to our office approximately 1 ½ years later with a shortening of the posterior facial height and significant restricted jaw movement. X-rays demonstrated arthritic conylar problems and loose screws and hardware in the repair site.

Dr. Graper opined that Plaintiff suffered a permanent disability of 8%.

b) <u>Treatment Notes and Referral Letter from Dr. Firas Hamdan</u>

Dr. Hamdan first examined Plaintiff on 12/1/99 and found "open bite deformity," "septal deviation with turbinate hypertrophy." He reviewed the x-rays taken by the ER on the date of the accident and found them "not optimal" and ordered a CT scan and a fluoroscopy. In a letter dated November 29, 2000, to an attorney named Silas Eubanks,

**No. 1:03cv140-mmp/ak**

Dr. Hamdan recited the history of the case and noted his expertise with these type of mandible fractures and the importance of early treatment.

    c)    <u>MRI results dated November 5, 2001</u>

Impression was:

1. Advanced degenerative changes of the temporal mandibular joint bilaterally.
2. Post-surgical and post-traumatic changes to the right condylar head as described above with a possible loose screw trapped within the joint. Anterior translocation of the condylar heads bilaterally in the closed mouth position as described above.

    d)    <u>Surgical notes of Dr. Graper dated November 23, 2001</u>

Dr. Graper performed surgery on Plaintiff to remove the hardware from his previous fracture repair and to correct a bilateral malunion. It appears that the operation went well.

    e)    <u>Dental notes from the VA (doc. 77)</u>

Treatment notes dated May 2000 through May 2001 show teeth extraction and fitting of a partial denture.

## V.    Lack of Subject Matter Jurisdiction (doc. 44)

Defendant once again moves to dismiss the complaint for Plaintiff's failure to exhaust administrative remedies within two years of the date of injury, December 9, 1999. Defendant contends, and now provides medical evidence to show that Plaintiff sought treatment from the VA following his surgery on December 9, 1999, and reported continued problems with his jaw, which it contends shows that he knew of the elements of a medical malpractice claim at this time or certainly before his second surgery in November 2001.

**No. 1:03cv140-mmp/ak**

The Federal Tort Claims Act (FTCA) provides that a tort claim against the United States "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b). In a medical malpractice action under the FTCA, a claim accrues "when the plaintiff knows both the existence and cause of his injury, and not at a later time when he also knows that the acts inflicting the injury may constitute medical malpractice." <u>United States v. Kubrick</u>, 444 U.S. 111 (1979). <u>See</u> also <u>Price v. United States</u>, 775 F.2d 1491, 1494 (11th Cir. 1985) (under FTCA claim for medical malpractice accrues when the Plaintiff is aware of both his injury and its connection with some act or omission of the defendant).

This Court has decided this issue and the question of exhaustion is closed. (<u>See</u> Doc. 31). Further, as Plaintiff points out in his response (doc. 53), Defendant has stipulated to the jurisdiction of this Court. (Doc. 38).

## VI.  Partial summary judgment (doc. 46)

Defendant contends that Dr. Raj Purush Terkonda was not an employee of the VA, he was an independent contractor, and as such all claims related to his alleged negligence should be dismissed. In support of this contention, the contract between the VA and the University of Florida and the Affidavit of the Contracting Specialist, Donna J. Nelson, has been submitted, which establishes that UF College of Medicine contracted to provide surgical services during the relevant time period and "contractor personnel shall not be considered VA employees for any purpose." Anthony Muschera, Executive Assistant to the Chief of Staff at the VA, attests in his affidavit that Dr. Terkonda was a contract specialist as described in the contract and not a federal employee at the time

**No. 1:03cv140-mmp/ak**

the surgery was performed. Dr. Terkonda performed the initial surgery on Plaintiff's jaw on December 9, 1999. Plaintiff named him in the original and amended complaints, but based on the Court's mistaken belief that this was a "VA doctor," as Plaintiff alleged, it did not have him or any of the individuals served and substituted the United States as the sole defendant pursuant to 28 U.S.C. §2679. (See Doc. 15).

The Court has read the contract materials submitted by Defendant and the case on point, Lurch v. United States, 719 F.2d 333 (10th Cir. 1983), and finds that Terkonda is indeed not an employee of the federal government for purposes of the Federal Tort Claims Act. Thus, Defendant's motion for partial summary judgment should be granted, and any claims against the government under the FTCA for medical care provided by Dr. Terkonda should be dismissed.

It is not clear how dismissing this claim affects the present lawsuit. Plaintiff has named other physicians in his amended complaint (doc. 14), Drs. Darby Marshall, John Westine, and Sivetha Collins, whom Defendant has not asserted are independent contractors, and it is not clear from either the Plaintiff or the Defendant what each of these physicians did or did not do with regard to his surgery. The medical evidence provides no clarity. In its Statement of Facts attached to the motion (doc. 47), Defendant asserts only that "Dr. Terkonda was the attending surgeon who performed surgery to repair the plaintiff's jaw fractures." Narrowing Plaintiff's general claim of malpractice to specific medical personnel and attaching liability to the Defendant can only be accomplished by extensive and complicated discovery procedures far above the abilities of this *pro se* Plaintiff. For this reason and others set forth below, if this case

**No. 1:03cv140-mmp/ak**

goes forward it would be appropriate to appoint Plaintiff counsel in the opinion of the undersigned.

VII.    **Defendant's Motion for Summary Judgment (doc. 40).**

In this motion, Defendant contends that Plaintiff has failed to disclose a medical expert to testify to the prevailing standard of care and under Florida law expert testimony is generally required to establish this standard.

The Court finds that Plaintiff's letter from Dr. Graper, who states his opinion that the previous practitioner "did a unilateral reduction leaving the opposite side still dislocated," is sufficient to raise an issue of material fact regarding the standard of care and for purposes of this motion constitutes a contrary expert opinion. Thus, insofar as Defendant seeks summary judgment on this ground, the motion is denied.

However, the undersigned agrees that experts will be necessary to effectively present the facts at issue in this lawsuit. Plaintiff has attempted to engage in discovery without the aid of counsel, and to his credit, has now avoided three efforts to dismiss his case. (Docs. 20, 40, 44). However, this lawsuit has reached a juncture where it appears that it can only go forward with appointed counsel. Once counsel makes an appearance, new pleadings will need to be filed, and a new scheduling order entered, at which point expert witnesses will be named. This case is old and what is herein recommended will essentially start the proceedings over. However, it has only been with the submission of the medical records that the Court has had an opportunity to address the merits of the case and finds that a viable claim has been made, albeit inartfully, and the nature of this suit is too complex to be managed *pro se.*

**No. 1:03cv140-mmp/ak**

The parties are again encouraged to consent to the jurisdiction of the magistrate judge to facilitate an earlier trial setting, but in any event the magistrate judge can be utilized for a settlement conference at the parties earliest convenience and upon their mutual consent.  If the parties wish to discuss settlement they are strongly encouraged to file a joint motion for this relief and should do so as soon as practicable.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion for partial summary judgment (doc. 46) be **GRANTED**, and that Plaintiff's claims against the government under the FTCA for medical care provided by Dr. Terkonda should be dismissed.  Defendant's other motions (docs. 40 and 44) should be **DENIED**, and this cause remanded to the undersigned for further proceedings consistent with the recommendations set forth above.

**IN CHAMBERS** at Gainesville, Florida, this  **27th**   day of June, 2006.


   **s/ A. KORNBLUM**
   **ALLAN KORNBLUM**
   **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:03cv140-mmp/ak**